UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | CR15-205 |
| | ORDER |
| DIVINE SON IRVIS, | |
| Defendant. | |

THIS MATTER comes before the Court on defendant's motion for compassionate release, docket no. 41. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order DENYING the motion.

**Background**

In August 2015, defendant Divine Son Irvis pleaded guilty to (i) possession of heroin with intent to distribute, and (ii) being a felon in possession of a firearm. <u>See</u> Plea Agr. (docket no. 20). In January 2016, he was sentenced to 144 months in the custody of the United States Bureau of Prisons ("BOP"). <u>See</u> Judgment (docket no. 31). Defendant is currently incarcerated at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"), and has a projected release date of October 12, 2025. He seeks immediate release on the grounds that his services are needed to care for his ill mother and minor child and his medical conditions (obesity, hypertension, and pre-diabetes) increase the possibility of acute illness or death from Coronavirus Disease 2019 ("COVID-19").

ORDER - 1

**Discussion**

A sentence is generally considered final and may not be altered except in limited circumstances. *See* 18 U.S.C. § 3582(b); *see also* *Dillon v. United States*, 560 U.S. 817, 824 (2010). Pursuant to the First Step Act of 2018, however, a defendant may directly request a reduction in the term of incarceration after exhausting administrative remedies.[1] *See* 18 U.S.C. § 3582(c)(1)(A).

**A.     Conditions at FCI Sheridan**

Defendant bears the burden of establishing "extraordinary and compelling reasons" justifying a reduction in his sentence. *See* *United States v. Powers*, No. CR15-166, 2020 WL 3605748, at *1 (W.D. Wash. July 2, 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i). In determining whether "extraordinary and compelling reasons" exist, the Court considers the "helpful guidance" offered by the application notes to United States Sentencing Guideline ("USSG") § 1B1.13. *See* *United States v. Lineberry*, No. CR17-175, 2020 WL 6685044, at *1 (W.D. Wash. Nov. 12, 2020). Defendant contends that the conditions at FCI Sheridan and BOP's practices render him unable to engage in the self-care necessary to avoid infection with the coronavirus that causes COVID-19. This argument misconstrues the application notes to USSG § 1B1.13, which envision that a defendant's physical and/or mental condition constitutes an "extraordinary

---

[1] According to the Government, when defendant filed his motion for compassionate release, he had not yet exhausted his administrative remedies. Pursuant to the parties' stipulation, docket no. 49, defendant's motion was renoted for consideration, and the requisite thirty (30) days since defendant sought relief from the Warden at FCI Sheridan has now elapsed. Thus, defendant has met the prerequisite of exhaustion.

ORDER - 2

and compelling" reason for compassionate release when it is so compromised that it can no longer be managed in prison.  *See* <u>Riley v. United States</u>, No. CR14-113, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020).  By focusing on external factors inherent in confinement or the facility or arising from BOP's procedures, defendant merely identifies factors affecting the risk of contagion for everyone at the correctional institution, and offers no means of identifying specific individuals deserving of compassionate release. *See* <u>Powers</u>, 2020 WL 3605748, at *2.

**B.     <u>Guideline Range Calculations</u>**

In a related case seeking relief under 28 U.S.C. § 2255 and <u>Rehaif v. United States</u>, 139 S. Ct. 2191 (2019), the Court rejected Divine Son Irvis's challenge to the validity of his guilty plea, but granted a certificate of appealability on the issue of whether, in the context of a collateral attack, a <u>Rehaif</u> error is structural.  *See* Order (C20-954, docket no. 10).  Defendant has not timely pursued review by the United States Court of Appeals for the Ninth Circuit and instead seeks compassionate release under 18 U.S.C. § 3582(c). In his reply brief in support of the requested § 3582(c) remedy, defendant for the first time raised an argument that the disparity between his actual sentence and the applicable guideline range, which he alleges would be much lower if computed now, constitutes an "extraordinary and compelling" reason to reduce his term of imprisonment.  Defendant's contention lacks merit.

With regard to the firearm count in this matter, defendant's sentencing range of 188-to-235 months was calculated pursuant to USSG § 4B1.4, which applies to an individual "who is subject to an enhanced sentence under the provisions of 18 U.S.C.

ORDER - 3

§ 924(e)." USSG § 4B1.4(a).  Section 924(e), known as the Armed Career Criminal Act ("ACCA"), applies when a felon found unlawfully in possession of a firearm has three or more convictions for a "violent felony" and/or a "serious drug offense" committed on different occasions.  18 U.S.C. § 924(e)(1).  The ACCA defines a "serious drug offense" as including "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."  *Id.* at § 924(e)(2)(A)(ii).  At the time of his sentencing in this case, defendant had two prior Washington state convictions for possession with intent to deliver ("PWI") cocaine and a federal conviction for possession of cocaine base with intent to distribute.[2]  *See* PSR at ¶¶ 18, 35, & 41 (docket no. 23).

In arguing that his violation of Washington's Uniform Controlled Substances Act ("VUCSA-PWI") does not qualify as a "serious drug offense" for purposes of the ACCA or USSG § 4B1.4, defendant relies solely on *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017).  *Valdivia-Flores* is, however, distinguishable and limited by the United States Supreme Court's ruling in *Shular v. United States*, 140 S. Ct. 779 (2020). In *Valdivia-Flores*, the Ninth Circuit held that VUCSA-PWI did not constitute an "aggravated felony" for purposes of federal immigration law.  In that context, an

---

[2] Defendant was on supervised release for the previous federal conviction when he committed the crimes in this case, and he received a 24-month sentence for violating the conditions of supervised release, which ran concurrently with the term of imprisonment in this matter.  *See* Judgment (CR04-461, docket no. 94).

ORDER - 4

"aggravated felony" includes "illicit trafficking in a controlled substance" or "a drug trafficking crime (as defined in section 924(c) of Title 18)."  8 U.S.C. § 1101(a)(43)(B).  Applying the categorical approach, the majority in <u>Valdivia-Flores</u> concluded that VUCSA-PWI sweeps more broadly than the comparable federal drug- trafficking offense because Washington's aiding and abetting statute[3] articulates a mens rea of "knowledge," whereas federal law requires "intent" for accomplice liability.[4]  876 F.3d at 1207-10.

Having marched down this path, the Ninth Circuit later held that VUCSA-PWI is categorically broader than the federal equivalent and therefore does not constitute a "serious drug offense" under the ACCA.  <u>United States v. Franklin</u>, 904 F.3d 793 (9th Cir. 2018), <u>abrogated by</u> <u>Shular v. United States</u>, 140 S. Ct. 779 (2020).  The Supreme

---

[3] The dissent in <u>Valdivia-Flores</u> indicated that the statute of conviction, namely RCW 69.50.401, should have been the focus of the analysis under the categorical approach, not the separate statute defining accessorial liability.  876 F.3d at 1213-14 (Rawlinson, C.J., dissenting).  The dissent further explained that "aiding and abetting is not a stand-alone offense" and was "beside the point" in assessing whether the crime for which an individual was convicted meets the definition of an "aggravated felony."  <u>Id.</u> at 1214.  This reasoning is consistent with Washington law.  <u>See</u> <u>State v. Teal</u>, 152 Wn.2d 333, 96 P.3d 974 (2004).  In <u>Teal</u>, the Washington Supreme Court made clear that accomplice liability is not an element of a crime or an alternative means of committing a crime; rather, if a person is involved in the commission of a felony, whether directly or by aiding or abetting, the person is a principal.  <u>Id.</u> at 338-39; <u>see also</u> <u>United States v. Espinoza</u>, 383 F. Supp. 3d 1088 (D. Nev. 2019) (aiding and abetting is not a separate offense but rather a theory of criminal liability).

[4] The Eleventh Circuit has disagreed with the Ninth Circuit's interpretation of the standard for complicity under federal law.  <u>Bourtzakis v. U.S. Att'y Gen.</u>, 940 F.3d 616 (11th Cir. 2019).  Citing to a United States Supreme Court decision, the <u>Bourtzakis</u> Court observed that the "intent" requirement for aiding and abetting a federal crime is "satisfied when a person actively participates in a criminal venture with full <u>knowledge</u> of the circumstances constituting the charged offense."  <u>Id.</u> at 623 (emphasis in original, quoting <u>Rosemond v. United States</u>, 572 U.S. 65, 77 (2014)).  The Eleventh Circuit therefore concluded that Washington law regarding accessorial liability is coextensive with federal law.  <u>Id.</u> at 621-25.

ORDER - 5

Court unanimously invalidated the Ninth Circuit's decision, explaining that, for purposes of the ACCA, the proper comparison is not whether the elements of the crime articulated by state law match the elements of a "generic offense" referenced in the definition of a "serious drug offense," but rather whether the elements set forth in the state statute "'necessarily entail one of the types of *conduct*' identified in § 924(e)(2)(A)(ii)." *Shular*, 140 S. Ct. at 784-85 (emphasis in original).[5]  The *Shular* Court reasoned that, in contrast to burglary, arson, and extortion, which appear within the ACCA's definition of "violent felony," and which have common-law histories and meanings, the terms included in § 924(e)(2)(A)(ii), namely manufacturing, distributing, and possessing with intent to manufacture or distribute, are not the names of generic offenses, but rather descriptions of criminal behavior with respect to controlled substances. *Id.* at 785.  This interpretation is consonant with the view that, given the different nomenclatures used in various states, Congress's best chance of capturing within the ACCA's definition of a "serious drug offense" the substance of the state and federal laws at issue was to reference the prohibited activity. *Id.* at 786.

   Consistent with *Shular*, USSG § 4B1.4 remains the correct guideline to apply. Defendant's two prior VUCSAs involved the ACCA-enumerated conduct of "possessing with intent to manufacture or distribute" a controlled substance, and they each carried a

---

[5] In asserting that the applicable guideline range has decreased since the time of sentencing in this matter, defense counsel did not cite either *Franklin* or *Shular*, both of which were decided long before defendant filed his motion for compassionate release.  Defense counsel's failure to bring this authority to the Court's attention is troubling.

ORDER - 6

maximum term of ten years because they related to cocaine, which is a Schedule II controlled substance.  *See* 18 U.S.C. § 924(e)(2)(A)(ii); RCW 69.50.401(1) & (2)(a); RCW 69.50.206(b)(4).  Defendant does not dispute that his previous federal conviction qualifies as a strike under the ACCA.  Thus, for purposes of sentencing on the charge of being a felon in possession of a firearm, defendant has the requisite three convictions for a "serious drug offense."  Under USSG § 4B1.4, defendant's offense level remains a 34 and his criminal history category remains a VI because he possessed the firearm at issue "in connection with . . . a controlled substance offense."  USSG §§ 4B1.4(b)(3)(A) & (c)(2).  Defendant's offense level is adjusted to 31 to take into account his acceptance of responsibility, and his guideline range remains 188-to-235 months.  *See* USSG Ch. 5, Part A.  Defendant's contention that, if he were sentenced today, his imprisonment range, and resulting term of incarceration, would be substantially lower is simply frivolous.

**C.      Safety of the Community**

In deciding whether to grant compassionate release, the Court must consider the factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A).  Having done so, the Court concludes that, even if defendant could demonstrate the required "extraordinary and compelling reasons" to support his motion, his immediate release would not be consistent with § 3553(a), given the nature, circumstances, and seriousness of his crimes of conviction, his history and characteristics, and the need to promote respect for the law, afford adequate deterrence, and protect the public from future offenses defendant is likely to commit.  *See* 18 U.S.C. §§ 3553(a)(1) & (2)(A)-(C).  Defendant is a repeat offender, having previously been convicted of drug-trafficking offenses and having violated the

ORDER - 7

terms of his supervised release in a prior case by possessing a firearm in connection with yet another crime involving a controlled substance.  He has at least three convictions for assault, one involving his then-pregnant girlfriend.  *See* PSR at ¶¶ 37-39 (docket no. 23). In addition, defendant has been far from a model prisoner, accruing six violations while in BOP custody, for assaultive, insolent, and substance-related behavior, *see* Gov. Ex. A (docket no. 48-1), and he has shown no sign of reform.  The Court has no faith in defense counsel's suggestion that defendant is "now in the best position to turn a corner in his life," Reply at 5 (docket no. 51), but rather concludes that defendant would pose a serious danger to the community if he is released prematurely from prison.  Defendant's motion for compassionate release is therefore DENIED.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)     Defendant's motion for compassionate release, docket no. 41, is DENIED; and

(2)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 3rd day of March, 2021.

/s/ Thomas S. Zilly
_____
Thomas S. Zilly
United States District Judge

ORDER - 8